UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

_____

EDWARD R. O'CONNOR,

                           Plaintiff          DECISION AND ORDER

-vs-

                                         1:18-CV-00740 CJS

ANDREW M. SAUL,
Commissioner of Social Security,

                           Defendant.

_____

APPEARANCES

| | |
|---|---|
| For the Plaintiff: | Dennis A. Clary<br>755 Center Street<br>P.O. Box 1044<br>Lewiston, New York 14092 |
| For the Defendant: | Jason P. Peck<br>Social Security Administration<br>Office of General Counsel<br>26 Federal Plaza, Room 3904<br>New York, New York 10278<br><br>Dennis J. Canning<br>Ellie Dorothy<br>Social Security Administration<br>Office of General Counsel<br>601 E. 12th Street, Room 965<br>Kansas City, Missouri 64106 |

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), which denied the application of Edward R. O'Connor ("Plaintiff") for Social Security Disability Insurance ("SSDI") benefits. Now before the Court is Plaintiff's motion (Docket No. [#12]) for judgment on the pleadings and Defendant's cross-motion [#16] for the same relief. For the reasons discussed below, Plaintiff's application is granted, Defendant's application is denied, and this matter is remanded for further administrative proceedings.

FACTUAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. The Court will summarize the record only as necessary for purposes of this Decision and Order.

On June 5, 2015, Plaintiff filed for SSDI benefits, claiming to be disabled due to a combination of physical impairments. After his claim was denied initially and following a hearing before an Administrative Law Judge ("ALJ") at which Plaintiff and a Vocational Expert ("VE") testified, on January 2, 2018, the ALJ issued a decision (13-18) denying Plaintiff's claim. Following the familiar five-step sequential analysis used to evaluate

Social Security disability claims,[1] the ALJ found at the first step that Plaintiff had not engaged in substantial gainful activity at any time since the alleged disability onset date. At step two of the sequential evaluation, the ALJ found that Plaintiff had the following medically determinable impairments:

> [H]istory of 2006 comminuted right supracondylar femur and tibial plateau fractures, status post 2006 open reduction internal fixation (ORIF); history of left carpal tunnel syndrome status post 2007 release surgery; history of severe left knee arthritis status post 2015 total knee replacement; mild degenerative arthritis of the bilateral hips; left epidondylitis; hypertension; asthma; and obesity.

(15). However, the ALJ further found that such impairments, singly or in combination, did not significantly limit Plaintiff's ability to perform basis work activities for twelve consecutive months, and that the impairments were therefore not severe. (15-16). Consequently, the ALJ denied Plaintiff's application at step two of the sequential evaluation.

In explaining this decision, the ALJ essentially reasoned that Plaintiff's injuries prior to his knee replacement were not severe, since he had been able to return to work as a maintenance technician. In this regard, the ALJ concluded that, as a maintenance technician, Plaintiff's responsibilities involved very heavy work as actually performed by

---

[1] *See, Bowen v. City of New York*, 476 U.S. 467, 470, 106 S. Ct. 2022, 2025, 90 L. Ed. 2d 462 (1986) ("Pursuant to statutory authority, the Secretary of Health and Human Services has adopted complex regulations governing eligibility for SSD and SSI payments. 20 CFR pt. 404, subpart P (1985) (SSD); 20 CFR pt. 404, pt. 416, subpart I (1985) (SSI). The regulations for both programs are essentially the same and establish a five-step "sequential evaluation" process.").

him. This even though he had not been able to return to his prior work as an HVAC technician, which had involved even heavier work:

> The claimant . . . has . . . past relevant work as an HVAC technician until an accident in 2006 when he sustained a comminuted right supracondylar femur and tibial plateau fractures and underwent ORIF. He also underwent left carpal tunnel release in 2007. The claimant returned to work in 2008 as a maintenance technician, work he testified was less physically demanding than his previous work as an HVAC technician, though he described it in a Work History Report as requiring very heavy exertion.

(16-17). The ALJ further explained that Plaintiff's subsequent knee replacement, and his resulting use of a cane to ambulate, did not amount to a severe impairment, since according to a consultative examiner, Plaintiff "had only mild restriction in walking, climbing stairs and ladders and kneeling on the left knee." (18). In that regard, the the consultative examiner specifically stated, in pertinent part:

> [The claimant] was unable to walk on his heels and toes with and without a cane. Squat contraindicated. Stance was normal. He is using the cane for pain, weightbearing, and outdoors, prescribed by a doctor. In my opinion, it is presently necessary. . . . He has mild restriction to walking, climbing stairs and ladders, and kneeling on his left knee at the present time. However, since his surgery was relatively recent on his total knee replacement, suggested recheck in the future.

(326). The ALJ asserted that such opinion "indicated" that Plaintiff did not have a severe impairment, stating:

> The only medical evidence after the claimant's knee replacement a week after he stopped working is report of the consultative examination by Dr.

4

Schwab, including Dr. Schwab's opinion indicating the claimant's impairments were not severe.

(18). The ALJ also repeatedly emphasized that there was no record of Plaintiff receiving further treatment following his knee replacement surgery. (18).

## STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered. *Id.*

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

As mentioned earlier, disability claims are analyzed pursuant to a five-step sequential evaluation. At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity, and here it is undisputed that Plaintiff was not doing so at any relevant time. At step two of the sequential evaluation, the ALJ must determine whether the claimant has a medically determinable impairment that is severe. *See, Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995) ("[T]he second step is a decision whether the claimant's medical condition or impairment is 'severe.' If not, benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c)."). A severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to so basic work activities." 20 C.F.R. § 404.1520(c).

> At step two of the evaluative process, an ALJ must determine whether an impairment significantly "limits a claimant's ability to do 'basic work activities.'" *Gray v. Astrue*, No. 04 Civ. 3736, 2009 U.S. Dist. LEXIS 47584, 2009 WL 1598798, at *5 (S.D.N.Y. June 8, 2009) (quoting 20 C.F.R. § 416.921). "An impairment or combination of impairments is 'not severe' when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have at most a minimal effect on an individual's ability to perform basic work activities." *Ahern v. Astrue*, No. 09–CV–5543 (JFB), 2011 U.S. Dist. LEXIS 30745, 2011 WL 1113534, at *8 (E.D.N.Y. Mar.24, 2011) (citing 20 C.F.R. § 404.1521).

*Jeffords v. Astrue*, No. 11-CV-620S, 2012 WL 3860800, at *3 (W.D.N.Y. Sept. 5, 2012) (citations omitted).

The standard at step two is quite low. Indeed, the Second Circuit has indicated that "[t]he standard for a finding of severity under Step Two of the sequential analysis is

6

*de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014); *see also*, SSR 85-28 (S.S.A. 1985) ("[T]he severity regulation is to do no more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could *never prevent a person from working.*") (emphasis added, citation and quotation marks omitted). Nevertheless, "[a] medically determinable impairment is not necessarily severe, and where such impairments do not interfere with a claimant's ability to work, the ALJ should find the impairments non-severe." *Botten v. Astrue*, No. 4:09CV57, 2010 WL 114929, at *6 (E.D. Va. Jan. 12, 2010) (citations omitted).

An ALJ, though, cannot properly deny a claim at step two of the sequential evaluation unless the medical evidence "clearly" indicates that the claimant's impairments, when combined, are not severe. *See*, SSR 85-28 ("If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process."). In this regard,

> [a] determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. *At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities*[,]

without regard to the claimant's age, education or work experience. SSR 85-28 (emphasis added).

7

As mentioned earlier, a severe impairment must have more than a minimal effect on an individual's ability to perform basic work activities. "Basic work activities" in this regard are defined as follows:

> Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522.

However, notwithstanding the foregoing principles, if the medical evidence indicates that the claimant's impairments would prevent him from performing his past relevant work, then the ALJ should find that the impairments are severe and continue with the sequential evaluation:

> If the medical evidence establishes only a slight abnormality(ies) which has no more than a minimal effect on a claimant's ability to do basic work activities, *but evidence shows that the person cannot perform his or her past relevant work because of the unique features of that work, a denial at the "not severe" step of the sequential evaluation process is inappropriate.*

8

> The inability to perform past relevant work in such instances warrants further evaluation of the individual's ability to do other work considering age, education and work experience.

SSR 85-28 (emphasis added).[2]

In the instant case, the ALJ's determination at step two of the sequential evaluation was erroneous and requires remand. Preliminarily, the ALJ's conclusion that Dr. Schwab's report "indicated" that Plaintiff's impairments were not severe is incorrect: The doctor was not asked to indicate whether Plaintiff's impairments were severe, as that is a determination to be made by the ALJ. The doctor indicated, though, that Plaintiff had limitations with regard to squatting, walking, climbing stairs and kneeling, and that he needed a cane to ambulate.

Additionally, the ALJ did not indicate whether Plaintiff could perform his past relevant work with the limitations identified by Dr. Schwab.[3] Indeed, the ALJ never asked the Vocational Expert ("VE") whether Plaintiff would be able to perform either of his past relevant jobs (which the VE described as involving "very heavy exertion as [they were] actually performed") with the conditions identified by Dr. Schwab. Rather, the ALJ merely asked the VE to classify the exertional levels of Plaintiff's past jobs, and to indicate whether Plaintiff had any skills that would be transferable to sedentary or

---

[2] Overlooking this provision, the Commissioner's brief incorrectly asserts that "past work and the residual functional capacity are not considered at step two and are only considered at the later steps of the sequential evaluation process." Def. Mem. of Law [#16-1] at p. 14.

[3] At most, the ALJ asserted that Plaintiff had been able to perform "very heavy work" after his leg fractures in 2006. (18).

9

light work. (43-44). In any event, it seems highly improbable that the VE would have indicated that Plaintiff could perform either of his past "very heavy" jobs with the limitations identified by Dr. Schwab, including the need to use a cane to ambulate.

In sum, as discussed earlier a finding of non-severity at step two of the sequential evaluation is inappropriate unless the claimant can perform his past relevant work (with its unique features) despite his medically-determinable impairments. Here, to the extent that the ALJ may have believed that Plaintiff could perform his past relevant work notwithstanding his impairments, the finding is unexplained and does not appear to have support in the record in any event. Consequently, the matter must be remanded for further administrative proceedings.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings [#12] is granted, Defendant's motion [#16] is denied, and this matter is remanded to the Commissioner for further administrative proceedings. The Clerk of the Court is directed to enter judgment for Plaintiff and close this action.

So Ordered.

Dated: Rochester, New York
      March 16, 2020

                        ENTER:

                        /s/ Charles J. Siragusa
                        CHARLES J. SIRAGUSA
                        United States District Judge